# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD OLANGO ABUKA,<br><br>                  Plaintiff,<br><br>    v.<br><br>CITY OF EL CAJON, *et al.*,<br><br>                Defendants. | Case No. 17-cv-00089-BAS-NLS<br><br>**ORDER:**<br><br>**(1) DENYING MOTION TO STRIKE (ECF No. 16); AND**<br><br>**(2) GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS (ECF No. 17)** |

Richard Abuka is the father of Alfred Olango, shot and killed by El Cajon Police Officer Richard Gonsalves. (First Amended Complaint ("FAC") ¶ 10, ECF No. 6.) Mr. Abuka has filed a two count Complaint against both Officer Gonsalves and the City of El Cajon ("City"), alleging a violation of his right to substantive due process under the Fourteenth Amendment by the unjustified shooting of his son and interference with his familial relationship and freedom of association by Officer Gonsalves's use of excessive force and failure to intervene or provide medical treatment. (FAC.) Both counts are brought under 42 U.S.C. § 1983.

The City and Officer Gonsalves move both to strike any references to negligence on the part of Officer Gonsalves (ECF No. 16) and to dismiss the FAC for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 17). The

Court finds these motions suitable for determination on the papers submitted and without oral argument.  *See* Civ. L.R. 7.1(d)(1).

 For the reasons stated below, the Court **DENIES** the Motion to Strike (ECF No. 16) and **GRANTS IN PART AND DENIES IN PART** the Motion to Dismiss (ECF No. 17).  The Court dismisses the City from the Complaint, but denies Officer Gonsalves's Motion to Dismiss on the grounds of qualified immunity.

## I.    STATEMENT OF FACTS

According to the FAC, on September 27, 2016, Mr. Olango's sister called 911 three times seeking emergency medical help for her brother "who she believed was experiencing a mental breakdown" at a shopping center in El Cajon.  (FAC ¶ 19.) Fifty minutes after her telephone calls, El Cajon Police Officer Richard Gonsalves arrived at the shopping center.  (FAC ¶ 20.)  Within one minute of his arrival, Officer Gonsalves shot Mr. Olango four times, killing him.  (*Id.*)  Mr. Olango was unarmed. (*Id.*)  Officer Gonsalves provided no advance warning to Mr. Olango before shooting. (FAC ¶ 24.)

The FAC alleges that, before arriving at the scene, Officer Gonsalves knew Mr. Olango was having a mental crisis.  (FAC ¶ 21.)  Officer Gonsalves allegedly was not investigating a crime at the time, and he knew Mr. Olango had not threatened anyone with harm.  (*Id.*)  Nonetheless, Officer Gonsalves "confronted, chased, and cornered" Mr. Olango.  (*Id.*)

Mr. Abuka alleges Officer Gonsalves acted negligently in his pre-shooting tactical conduct and decision-making by escalating to deadly force without warning, failing to wait for the PERT (Psychiatric Emergency Response Team) to arrive before confronting Mr. Olango, and not attempting non-lethal alternatives.  (FAC ¶ 23.)

According to the allegations, Mr. Olango posed no threat to Officer Gonsalves, and Officer Gonsalves knew Mr. Olango posed no threat.  (FAC ¶ 24.)  Finally, the

FAC alleges that Officer Gonsalves "failed to request medical aid for [Mr. Olango] as he lay dying on the ground as the result of multiple bullet wounds." (*Id.*)

With respect to the City, Mr. Abuka alleges the City made "dilatory dispatch decisions," failed to train and supervise Officer Gonsalves, and negligently retained Officer Gonsalves as an officer "despite his demonstrated unfitness." (FAC ¶ 27.)

## II.    LEGAL STANDARD

### A.    Motion to Dismiss

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (alteration in original). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Despite the deference

the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

### B. Motion to Strike

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, the court may strike from a complaint any matter that is "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (quoting *Sidney-Vinstein v. A.H. Robins, Co*., 697 F.2d 880, 885 (9th Cir. 1983), *rev'd on other grounds*, 510 U.S. 517 (1994)).

"'Immaterial' matter is that which has no essential or important relationship to the claim for relief." *Id.* "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.*

"Rule 12(f) motions are generally disfavored" partly "because of the limited importance of pleadings in federal practice." *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996) (citations omitted).

## III. ANALYSIS

### A. Motion to Dismiss

When the court considers a motion to dismiss based on qualified immunity, the court must ask first, assuming all facts in the complaint are true and taking these facts in the light most favorable to the plaintiff, do the alleged facts show the officer's conduct violated a constitutional right? *Billington v. Smith*, 292 F.3d 1177, 1183 (9th Cir. 2002), *abrogated on other grounds by County of Los Angeles v. Mendez*,

__U.S.__, 137 S. Ct. 1539 (2017).  "If not, then 'there is no necessity for further inquiries concerning qualified immunity.'  If so, then, 'the next sequential step is to ask whether the right was clearly established.'  A constitutional right is clearly established when, 'on a favorable view of the [allegations],' 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).  Thus, this Court looks first at the alleged constitutional violation.

Plaintiff alleges that the Defendants' conduct violated his right to substantive due process under the Fourteenth Amendment.  A parent has a Fourteenth Amendment right to the companionship and society of his son.  *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991).  "Official conduct that 'shocks the conscience' in depriving [a parent] of that interest is cognizable as a violation of due process."  *Hayes v. County of San Diego*, 736 F.3d 1223, 1230 (9th Cir. 2013) (quoting *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010)). "In determining whether excessive force shocks the conscience, the Court must first ask 'whether the circumstances are such that actual deliberation [by the officer] is practical.'"  *Id.* (alteration in original) (quoting *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008)).  "Where actual deliberation is practical, then an officer's 'deliberate indifference' may suffice to shock the conscience.  On the other hand, where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may be found to shock the conscience only if he acts with a purpose to harm unrelated to legitimate law enforcement objectives."  *Id.*; *see also Moreland v. Las Vegas Metro. Police Dept.*, 159 F.3d 365, 373 (9th Cir. 1998) (noting the controlling question is whether the officer acted with a purpose to harm that was unrelated to his attempt to stop the individual from endangering others).

Thus, an officer using deadly force to support a legitimate law enforcement objective does not violate the Fourteenth Amendment.  However, an officer using force that is (i) meant to teach a suspect a lesson, (ii) committed to "get even" with

the suspect, or (iii) used in the "rare situations where the nature of an officer's deliberate physical contact is such that a reasonable factfinder would conclude the officer intended to harm, terrorize or kill" does violate the Fourteenth Amendment. *Porter*, 546 F.3d at 1140-41 (quoting *Davis v. Township of Hillside*, 190 F.3d 167, 172-74 (3d Cir. 1999)); *Wilkinson v. Torres*, 610 F.3d at 554 ("[A] purpose to harm might be found where an officer uses force to bully a suspect or get even.").

For purposes of this Motion to Dismiss, the Court assumes that the decision by Officer Gonsalves to shoot Mr. Olango, which according to the FAC was made within one minute of his reaching the scene, was a snap judgment that was the result of an escalating situation. Therefore, the Court looks at whether the FAC makes allegations that support a conclusion that Officer Gonsalves acted with a purpose to harm unrelated to legitimate law enforcement objectives.

Assuming the allegations in the FAC are true, Plaintiff claims that at the time Officer Gonsalves shot and killed Mr. Olango, he knew: (1) Mr. Olango was having a mental breakdown (FAC ¶ 21); (2) Mr. Olango had not committed any crime (*id.*); (3) Mr. Olango had not threatened anyone (*id.*); and (4) Mr. Olango posed no threat to Officer Gonsalves (FAC ¶ 24). Finally, the FAC alleges that after shooting Mr. Olango, Officer Gonsalves "failed to request medical aid for [Mr. Olango] as he lay dying on the ground as the result of multiple bullet wounds." (*Id.*) Taking these allegations in a light most favorable to the Plaintiff, as the Court must do at this stage of the proceedings, the Court concludes these allegations are sufficient to support the claim that Officer Gonsalves acted with a purpose to harm unrelated to legitimate law enforcement objectives, and hence his conduct "shocked the conscience" and violated a constitutional right.

Under part two of the qualified immunity analysis, the Court must determine whether the right that was violated was clearly established at the time it was violated. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments

about open legal questions."). The court must determine whether the rule was sufficiently clear that "every 'reasonable official would have understood that what he is doing violates that right.'" *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011) (quoting *Ashcroft v. al-Kidd*, 563 U.S. at 743). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, __U.S.__, 137 S. Ct. 548, 551 (2017) (per curiam) (quoting *Mullenix v. Luna*, __U.S.__, 136 S. Ct. 305, 308 (2015)). "[T]he clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 137 S. Ct. at 552 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Although it is in the Fourth Amendment context, reviewing case law on constitutional violations resulting from an officer shooting a suspect is helpful in evaluating whether a reasonable officer would have understood that he violated a clearly established right. In *Tennessee v. Garner*, the Supreme Court held definitively, "[a] police officer may not seize an unarmed, nondangerous suspect by shooting him dead." 471 U.S. 1, 11 (1985). The Court further articulated, "[t]he use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable." *Id.* Furthermore, "[w]here the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Id.*

The Court finds the allegations in the FAC, as articulated above, are sufficient to conclude that—at the time Officer Gonsalves shot and killed Mr. Olango—it was clearly established that someone who is unarmed, is not a threat to anyone, and had not committed any crime has the right not to be shot and killed. The Court distinguishes the recent Supreme Court case of *County of Los Angeles v. Mendez*, which held that an officer may not be liable for an otherwise reasonable use of force where the officer intentionally or recklessly provoked the violent confrontation, because Plaintiff in this case clearly articulates an unreasonable use of force that

violates the Fourteenth Amendment without any reference to the old Ninth Circuit "provocation rule." *See* 137 S. Ct. at 1547-48.

Hence, assuming everything in the FAC is true and drawing all reasonable conclusions in favor of Plaintiff, the Court concludes Plaintiff has sufficient allegations to meet the qualified immunity burden at this stage of the proceedings.

### B. Motion to Strike

Defendants move to strike any reference to the fact that Officer Gonsalves's pre-shooting conduct may have been negligent. (ECF No. 16.) In the FAC, Plaintiff alleges that Officer Gonsalves acted negligently in his pre-shooting tactical conduct and decision-making by escalating to deadly force without warning, failing to wait for the PERT (Psychiatric Emergency Response Team) to arrive before confronting Olango, and not attempting non-lethal alternatives. (FAC ¶ 23.)

The fact that an officer's conduct, leading up to a deadly confrontation, was imprudent, inappropriate, or even reckless is not sufficient to avoid dismissal where the officer's conduct at the time of the shooting does not otherwise shock the conscience. *George v. Morris*, 736 F.3d 829, 839, n.14 (9th Cir. 2013); *see also City & County of San Francisco v. Sheehan*, __U.S.__, 135 S. Ct. 1765, 1771 (2015) (alleging merely bad tactics that result in a deadly confrontation that could have been avoided is insufficient) (citing *Billington*, 292 F.3d at 1188). Moreover, looking at pre-shooting tactics does risk "the sort of hindsight bias the Supreme Court has forbidden." *Id.* Furthermore, the Court recognizes that in *Mendez*, the Supreme Court rejected the Ninth Circuit's "provocation rule" that an officer may be liable for an otherwise reasonable use of force where the officer intentionally or recklessly provoked the violent confrontation by an act that was itself an independent Fourth Amendment violation. 137 S. Ct. at 1547-48.

Nonetheless, as discussed above, whether Officer Gonsalves acted with a purpose to harm unrelated to any law enforcement objective will be a key factual

analysis in this case.  His pre-shooting conduct may be relevant to support a claim that Officer Gonsalves was not acting to fulfill a law enforcement objective, but instead was trying to teach the suspect a lesson, bullying him, attempting to get even with him, or intending to harm, terrorize, or kill him.  *See Davis*, 190 F.3d at 173; *Wilkinson v. Torres*, 610 F.3d at 554.

Therefore, the Court **DENIES** the Motion to Strike while noting that the fact that Officer Gonsalves may have acted negligently will be insufficient on its own to support the alleged constitutional violation.

### C.    Monell Liability

A municipality generally is not liable for the unconstitutional conduct of its employees.  *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978).  "[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*) (emphasis in original).  "It is only when the execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable under § 1983."  *Id.* (quoting *Springfield v. Kibbe*, 480 U.S. 257, 267 (1987)) (internal quotations omitted).

Thus, under *Monell*, in order to allege a § 1983 claim against a municipality, a plaintiff must allege:  (1) the plaintiff was deprived of a constitutional right; (2) the municipality had a policy that amounted to deliberate indifference of plaintiff's constitutional right; and (3) the policy was the moving force behind the constitutional violation that injured the plaintiff.  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Plumeau v. Sch. Dist. No. 40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)).

The failure of a municipality to train its employees "may amount to a policy of deliberate indifference" such that liability under *Monell* has been sufficiently alleged "if the need to train was obvious and the failure to do so made a violation of

constitutional rights likely." *Dougherty*, 654 F.3d at 900 (citing *Harris*, 489 U.S. at 390). "Similarly, a failure to supervise that is 'sufficiently inadequate' may amount to 'deliberate indifference.'" *Id.* (quoting *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989)). "Mere negligence in training or supervision, however," is insufficient. *Id.*

The City argues that the allegations in the FAC are insufficient to amount to municipal liability under *Monell*. (ECF No. 17.) Plaintiff fails to address this argument in his Opposition (ECF No. 19), and the Court could construe this silence as "abandonment of the claim and concession that the claim be dismissed." *Quick Korner Mkt. v. U.S. Dep't of Agric.*, 180 F. Supp. 3d 683, n.12 (S.D. Cal. 2016) (citing *Conservation Force v. Salazar*, 677 F. Supp. 2d 1203, 1211 (N.D. Cal. 2009)).

However, even without construing the lack of reply as a concession, the allegations in the FAC are insufficient to amount to municipal liability under *Monell*. First, the Plaintiff alleges that the City made "dilatory dispatch decisions." (FAC ¶ 27.) Presumably this resulted in the alleged fifty minute delay between the time Mr. Olango's sister called 911 and the time a police officer responded. However, Plaintiff fails to allege how this delay was a policy of "deliberate indifference," as opposed to the negligence of an employee. Furthermore, the FAC does not explain how this alleged delay was the moving force behind or cause of the constitutional violation (the later shooting of Mr. Olango by Officer Gonsalves).

Next, Plaintiff alleges the City failed to train and supervise Officer Gonsalves. (FAC ¶ 27.) This allegation amounts to little more than a "label and conclusion" found insufficient under *Twombly*. *See* 550 U.S. at 555. To succeed at the pleading stage, Plaintiff must allege facts that support this largely legal conclusion.

Finally, Plaintiff alleges that the City negligently retained Officer Gonsalves despite his "demonstrated unfitness." (FAC ¶ 27.) Again, this conclusory statement is devoid of factual support. Furthermore, simple negligence on the part of the City is insufficient. *See Dougherty*, 654 F.3d at 900.

Plaintiff fails to allege facts supporting a theory that the City is liable for the acts of Officer Gonsalves or any other city employee. Hence, the Court **GRANTS** the City's Motion to Dismiss on this ground.

## IV. CONCLUSION

The Court **DENIES** Defendants' Motion to Strike (ECF No. 16). The Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss (ECF No. 17), denying Officer Gonsalves's Motion to Dismiss, but granting the City's Motion to Dismiss.

As a general rule, a court freely grants leave to amend a complaint that has been dismissed, unless "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *See* Fed. R. Civ. P. 15(a); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Hence, the Court gives Plaintiff leave to amend the FAC. Any amended Complaint must be filed by **September 8, 2017**.

**IT IS SO ORDERED.**

**DATED: August 25, 2017**

Hon. Cynthia Bashant
United States District Judge